

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-15-2004

# Adegbite Olubi v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-4349

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Adegbite Olubi v. Atty Gen USA" (2004). *2004 Decisions*. Paper 1090.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/1090

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———————

No. 02-4349

———————

ADEGBITE OLUBI,
                        Petitioner

v.

JOHN ASHCROFT, ATTORNEY GENERAL
OF THE UNITED STATES OF AMERICA,
                        Respondent


———————

Petition for Review of an Order
of the Board of Immigration Appeals
(A72 783 891)

———————

Submitted Under Third Circuit LAR 34.1(a)
January 12, 2004

Before:  SLOVITER, RENDELL and ALDISERT, Circuit Judges

(Filed: January 15, 2004)

———————


OPINION OF THE COURT

SLOVITER, <u>Circuit Judge</u>.

Adegbite Olubi filed this petition for review challenging the October 29, 2002 Board of Immigration Appeals (BIA) affirmance of the decision of the Immigration Judge (IJ) denying Olubi's applications for asylum, withholding of removal, and protection under the Convention Against Torture. The IJ concluded that Olubi had not met his burden of proof with respect to each of his claims because his testimony regarding religious persecution in Nigeria was not credible. Olubi argues that the IJ's adverse credibility determination was not supported by substantial evidence and that the BIA's summary affirmance of the IJ's decision violated his right to due process under the Fifth Amendment. We will affirm.

**I.**

In November 1991, Adegbite Olubi, a Nigerian citizen, entered the United States on a tourist visa that was set to expire May 15, 1992. Because Olubi stayed in the United States beyond the expiration date, the Immigration and Naturalization Service ordered Olubi to appear for removal proceedings. Olubi admitted to the IJ that he had over-stayed his visa, but, based on a claim of religious persecution, Olubi applied for asylum, restrictions on removal, withholding under the Convention Against Torture, and, in the alternative, voluntary departure, and submitted an affidavit in support thereof.

During his hearing before the IJ, Olubi testified that Muslims had persecuted him and his father because they were Pentecostal Christian ministers who preached at revivals

2

and lived in a predominantly Muslim northern city, Kano, from 1977 to 1987. Olubi testified that a group of Muslims who "said they didn't want to hear about God" physically attacked and beat him and his family en route to a store, but Christian police officers eventually came to their rescue. AR at 114. Olubi also stated that his father once had a rock thrown at his car and his father received "some" threatening letters. However, Olubi could not remember the date or the year of this event.

Olubi testified that, in 1983 or 1984, his father and stepmother were attacked and cut with a knife near Lagos. Although none of the assailants made any reference to religion, Olubi surmised that the attackers were Muslims because prayer beads fell out of one of the assailant's pockets.

With respect to his own personal experiences, Olubi testified that he was ordained as a pastor at age eighteen in 1982, though his affidavit stated that he was ordained in 1984. When Olubi stated that he traveled between Kano and Lagos three times per month in his capacity as a minister, the IJ asked him the distance and travel time between these locations. Olubi stated that it took four or five hours, but did not know the distance.

Initially, Olubi stated that the police never arrested or detained him based on his religion and that his family had excellent relations with police. On cross-examination, however, he also testified that the police ransacked his home in 1984.

Olubi testified that in 1986 he and other Christians attending a Christian revival were attacked – kicked, slapped, and cut – by a large group of Muslims in Kano. Olubi

stated that approximately 200 people were killed and that he decided to come to the United States based on his fear that he would be killed if he returned. Olubi described the 1986 attack on Christians in his affidavit, but failed to mention that he was present at that attack and that he sustained injuries as a result of his attendance.

After hearing Olubi's testimony, the IJ denied each of Olubi's applications on June 7, 2000, primarily based on his finding that Olubi was not credible. However, the IJ further stated that, even if Olubi's testimony were credible, Olubi and his family experienced "isolated incidents of hostility and anger from the rival Muslim factions and have been also victimized by isolated incidents of violence." App. at 37-38. Although the IJ acknowledged hostility between Christians and Muslims in Nigeria, the IJ found no evidence that the Nigerian government condoned violence against Christians or failed to take steps to calm religious conflicts. Moreover, the IJ rejected Olubi's claim that he would be persecuted if he returned to Nigeria because Olubi would encounter little difficulty if he returned to a predominantly Christian area of southern Nigeria, rather than the more Muslim area in the north. Because the IJ found insufficient evidence to support Olubi's asylum application, he also denied Olubi's application for withholding of removal and torture claim, both of which require a higher evidentiary burden of proof than asylum claims. The IJ also denied Olubi's motion for voluntary departure.

Olubi appealed the IJ's decision to the BIA and on October 29, 2002, the BIA affirmed without opinion, making the IJ's decision the final agency determination for

4

review. Gao v. Ashcroft, 299 F.3d 266, 271 (3d Cir. 2002). On November 29, 2003, Olubi filed a petition for review in this court.

## II.

The Government argues that this court lacks jurisdiction to review Olubi's petition because it was filed on November 29, 2002, thirty-one days after the BIA's October 29, 2002 affirmance. The Immigration and Nationality Act (INA) provides that "[t]he petition for review must be filed not later than 30 days after the date of the final order of removal," 8 U.S.C. § 1252 (b)(1); the Government contends that Olubi's petition was untimely filed and deprives this court of jurisdiction. However, the thirtieth day after the BIA's decision fell on November 28, Thanksgiving, a legal holiday. Federal Rule of Appellate Procedure 26 (a) (3) provides that when the last day of a time-period is a legal holiday the last day should not be included in the computation of the time-period. Excluding the legal holiday, Olubi's petition was timely filed on the thirtieth day after the BIA's decision, November 29. We have jurisdiction to review Olubi's claims under 8 U.S.C. § 1252.

Olubi makes two principal claims: first, the IJ erred in making an adverse credibility determination in evaluating Olubi's religious persecution claim; and second, the BIA denied Olubi his Fifth Amendment due process right by summarily affirming the IJ's decision without opinion or explanation of the reasons for its affirmance.

5

**III.**

As mentioned above, we review the IJ's opinion as the final agency decision

because the BIA affirmed without opinion. The IJ found that Olubi had not satisfied the

burden of providing credible evidence to support his asylum claim. See Gao, 299 F.3d at

272. The IJ's adverse credibility determination was a finding of fact, which we review

under the substantial evidence test. Id. We have recently explained the substantial

evidence test as follows:

> [T]he question whether an agency determination is supported by substantial
> evidence is the same as the question whether a reasonable fact finder could make
> such a determination based upon the administrative record. . . .Thus, where we
> review an IJ's credibility determination, we must ask whether the determination is
> supported by evidence that a reasonable mind would find adequate. We look at an
> adverse credibility determination to ensure that it was 'appropriately based on
> inconsistent statements, contradictory evidences, and inherently improbable
> testimony . . . in view of the background evidence on country conditions.'

Dia v. Ashcroft, 2003 WL 22998113, at *13-*14 (3d Cir. Dec. 22, 2003) (en banc)

(citations omitted). While recognizing the deference due to an IJ's conclusion when it is

based upon the record, we have cautioned that IJs may not unduly rely on unsupported

inferences, speculation, conjecture, or opinions that lack foundation in the record. Id. at

*14. Moreover, the IJ's decision must provide specific, cogent reasons for reaching

credibility determinations. Id.

The IJ explained that he found Olubi not credible because there were "too many

contradictions between [Olubi's] testimony and his sworn affidavit." App at 36-37. For

6

example, in his affidavit, Olubi described the 1986 attack on Christians in Kano, but it was not until the hearing that Olubi volunteered that he had been present at the Kano gathering, attacked, and injured. Similarly, the IJ noted that Olubi testified that his family had good relations with the local police, despite his statement in the affidavit that the police ransacked his father's home. Lastly, the IJ stated that Olubi was "not able to tell the Court when certain very important things happened in his life." App. at 37. In particular, the IJ was troubled by Olubi's inability to recall the date or year when his family was attacked or to recall the date of his ordination as a minister. Further, despite having testified that he traveled between Lagos and Kano three times monthly, Olubi did not know the distance between the two cities. As such, the IJ listed several specific discrepancies between Olubi's affidavit testimony and his hearing testimony. The IJ further pointed to specific traumatic life events for which Olubi could not provide a date. In each case, the IJ's conclusions are firmly rooted in the evidence presented in the record and are not speculative, arbitrary or conjectural.

Although Olubi now argues that these omissions and discrepancies are minor or immaterial to his asylum claim, we disagree. For example, we find that Olubi's testimony regarding the 1986 attack on Christians to be both a major element of his case and material to his asylum claim. It is not surprising that the IJ would be incredulous that, while Olubi described the 1986 attack in his affidavit, he failed to recognize that it would be relevant to mention that he was present at the attack and was beaten, slapped, and cut

7

during this attack. Although Olubi now explains that his "affidavit included general information," rather than specific details, Olubi's explanation is undercut by the fact that his affidavit includes significant detail on myriad topics, such as his upbringing, his family's involvement in ministry, and harassment faced by his father.

Olubi also suggests that the IJ erred in finding inconsistencies within his testimony regarding his family's relations with police. As mentioned above, the IJ was concerned because, on direct examination, Olubi stated that his family had not had problems with the police, but then on cross-examination, Olubi testified that his home had been ransacked by the police. Olubi now explains that, although the police ransacked his house in 1984 in the southern area of Lagos, Olubi thought that the IJ had asked him specifically about the north, not the south. In fact, the record shows that the IJ asked Olubi on direct examination about his family's relations in both the north (Kano) and the south (Lagos). In describing both regions, however, Olubi failed to disclose that the police ransacked his home. The IJ did not err in finding this inconsistency to impugn Olubi's credibility.

Lastly, although a reasonable fact finder might have been less troubled by Olubi's inability to recall the dates of traumatic life events that occurred in his childhood, this court is not tasked with the duty of re-weighing whether it would have been more reasonable to reach an alternative conclusion. It is sufficient that the IJ's decision was reasonable and supported by the record. Because the IJ's finding rested upon several

8

inconsistencies, discrepancies, and shortcomings in Olubi's testimony, we cannot hold

that the IJ's adverse credibility determination was unreasonable.

**IV.**

We have plenary review over Olubi's Fifth Amendment challenge to the BIA's

immigration procedures. <u>Abdulrahman v. Ashcroft</u>, 330 F.3d 587, 595-96 (3d Cir. 2003).

Olubi's Fifth Amendment claim is foreclosed by this court's recent decision in <u>Dia</u>, 2003

WL 22998113, in which we held that the streamlining regulations, which permit the BIA

to issue an affirmance without opinion, do not violate the due process clause of the Fifth

Amendment. <u>Id.</u> at *9-*10.

**V.**

We will deny the Government's motion to dismiss for lack of jurisdiction and we

will deny Olubi's Petition for Review.

_____

TO THE CLERK:

   Please file the foregoing opinion


   /s/ Dolores K. Sloviter
      Circuit Judge